# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | |
|---|---|
| **COREY HALL,**<br>**Individually and on behalf of all others**<br>**similarly situated,** | **Case No.** _____ |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| v. | **COLLECTIVE ACTION**<br>**PURSUANT TO 29 U.S.C. § 216(b)** |
| **BALLAD HEALTH,** | |
| **Defendant.** | **CLASS ACTION PURSUANT TO**<br>**FED. R. CIV. P. 23** |

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff—Corey Hall—brings this action individually and on behalf of all current and former hourly patient-facing care providers, who were subject to an automatic meal break pay deduction (collectively, "Plaintiff and the Putative Collective/Class Members"), and who worked for Defendant—Ballad Health ("Ballad")—anywhere in the United States, at any time from January 6, 2020, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid straight time under Tennessee common law.

Additionally, Plaintiff Hall asserts a claim under the FLSA for retaliation and under the Tennessee Public Protection Act ("TPPA"), T.C.A. § 50–1–304, for retaliatory discharge.

## I.
## OVERVIEW

1.	This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA, and a class action pursuant to the state laws of Tennessee under FED. R. CIV. P. 23, to recover unpaid straight time wages and other applicable damages and penalties.

2.     Plaintiff and the Putative Collective/Class Members are those similarly situated persons who worked for Ballad at any time from January 6, 2020, through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of overtime in violation of state and federal law.

3.     Although Plaintiff and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.     Likewise, Plaintiff and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5.     During the relevant time period, Ballad knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6.     Specifically, Ballad's regular practice—including during weeks when Plaintiff and the Putative Collective/Class Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to automatically deduct a 30-minute meal-period from Plaintiff and the Putative Collective/Class Members' daily time even though they regularly performed (and continue to perform) compensable work "off the clock" through their respective meal-period breaks.

7.     The effect of Ballad's practices was (and is) that all compensable time worked by Plaintiff and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Ballad failed to properly compensate Plaintiff and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and Tennessee state law.

8.      Plaintiff and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or Tennessee state law.

9.      Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time compensation and other damages owed under Tennessee state law as a class action pursuant to FED. R. CIV. P. 23.

10.      Plaintiff also prays that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

11.      Plaintiff also prays that the Rule 23 class be certified as defined herein, with Plaintiff Hall designated as the Class Representative of the Tennessee Class.

12.      Plaintiff Hall also asserts claims of retaliation under the FLSA and retaliatory discharge under TPPA.

13.      Specifically, Ballad retaliated against Plaintiff Hall by terminating his employment when he asserted his right to a meal break under Tennessee state law and his right to overtime wages for all hours worked in excess of forty (40) hours in a workweek under the FLSA.

## II.
## THE PARTIES

14.      Plaintiff—Corey Hall ("Hall")—was employed by Ballad in Tennessee during the relevant time period. Plaintiff Hall did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

15.      The FLSA Collective Members are those current and former hourly patient-facing care providers who were employed by Ballad at any time from January 6, 2020, through the final disposition

---

[1] The written consent of Corey Hall is attached hereto as Exhibit "A."

of this matter, and have been subjected to the same illegal pay system under which Plaintiff Hall worked and was paid.

16.     The Tennessee Class Members are those current and former hourly patient-facing care providers who were employed by Ballad in Tennessee, at any time from January 6, 2017, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Hall worked and was paid.

17.     Defendant Ballad Health is a domestic not for profit corporation, licensed to and doing business in the State of Tennessee, and may be served through its registered agent for service of process: **Timothy S. Belisle, 400 N. State of Franklin Rd, Johnson City, Tennessee 37604-6035.**

### III.
### JURISDICTION & VENUE

18.     This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

19.     This Court has supplemental jurisdiction over the additional Tennessee state law claims pursuant to 28 U.S.C. § 1367.

20.     Plaintiff has not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

21.     This Court has general and specific personal jurisdiction over Ballad because Tennessee qualifies as its home state and because Ballad employed Hall in Tennessee.

22.     Venue is proper pursuant to 28 U.S.C. § 1391 in the Eastern District of Tennessee because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

23.     Additionally, Ballad's corporate headquarters are in Johnson City, Tennessee, and Plaintiff Hall worked for Ballad in Kingsport, Tennessee, all of which are located within this District and Division.

## IV.
## BACKGROUND FACTS

24.     Defendant Ballad operates a "family" of 21 hospitals in East Tennessee and Southwest Virginia, three tertiary medical centers in Bristol, Kingsport, and Johnson City, a dedicated children's hospital, a behavioral health hospital, an addiction treatment facility, long-term care facilities, clinics, pharmacies, home care services, and hospice services.[2]

25.     To provide its services, Ballad employed (and continues to employ) numerous hourly patient-facing care providers—including Plaintiff and the individuals that make up the putative collective and class.

### Plaintiff Hall's Employment With Ballad

26.     Plaintiff Hall began working for Ballad in August 2018 as a Nurse Intern at Ballad's Holston Valley Medical Center ("Holston Valley").

27.     In September 2019, Plaintiff Hall was promoted and began working for Ballad as a Staff Nurse at Holston Valley.

28.     In June 2021, Plaintiff Hall began to work for Ballad as a Travel Nurse. During this time Plaintiff Hall was jointly employed by a travel nurse recruiting agency called Lancesoft and Ballad.

29.     As a Travel Nurse, Plaintiff Hall continued working for Ballad at its Holston Valley location.

30.     Ballad directed, controlled, and supervised Plaintiff Hall while he worked at Holston Valley. Specifically, Plaintiff Hall had Ballad managers who controlled his daily work and had the

---

[2] https://www.balladhealth.org/locations

authority to direct his duties throughout the day. Plaintiff Hall also had to abide by Ballad's policies and procedures.

31.     Ballad had the authority to hire and fire Plaintiff Hall. Indeed, Ballad exercised that power by firing Plaintiff Hall after he complained of unpaid meal breaks.

32.      Plaintiff Hall performed all of his work for Ballad and on property owned and controlled by Ballad.

33.     Ballad also controlled Plaintiff Hall's pay. Specifically, Ballad applied a meal deduction to Plaintiff's pay and refused to pay him for all hours worked when he reported to Ballad that he worked through his meal breaks.

34.     Further, Ballad maintained and controlled Plaintiff Hall's record of employment. Specifically, Ballad maintains the original copies of Plaintiff Hall's hours of work, employment contract, and other employment documentation within its electronic database.

**Meal Break Deductions**

35.     Plaintiff and the Putative Collective/Class Members were employed by Ballad as non-exempt, patient-facing care providers who had a meal break automatically deducted from their daily time.

36.     Plaintiff and the Putative Collective/Class Members job titles include (but are not limited to): Surgical Tech, Health Advocate, Patient Service Representative, Nursing Assistant, Certified Medical Assistant, Registered Nurse, Certified Nurse Assistant, Patient Care Assistant, Travel Nurse, and Licensed Practical Nurse.

37.     Plaintiff and the Putative Collective/Class Members' job duties include assisting with treatments ordered by doctors, assisting medical professionals, interviewing patients, measuring vital signs, recording patient information, assessing patients, answering phones, checking on patients, answering patient questions, and more generally providing direct care for Ballad's patients.

38.     While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work throughout Ballad's facilities.

39.     Importantly, none of the FLSA exemptions relieving a covered employer (such as Ballad) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective/Class Members.

40.     Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Ballad resulting in the complained of FLSA and Tennessee state law violations.

41.     Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, in that they all provide patient-facing healthcare services on behalf of Ballad.

42.     Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their pay structure in that they are all paid on an hourly basis and have at least a 30-minute meal break deducted automatically.

43.     Plaintiff and the Putative Collective/Class Members are similarly situated with respect to the policies (and practices) of Ballad resulting in the complained of FLSA and Tennessee state law violations.

44.     Plaintiff and the Putative Collective/Class Members were typically scheduled to work three (3) or four (4) twelve (12) hour shifts a week, usually from 7:00 a.m. until 7:00 p.m. This equates to approximately thirty-six (36) or forty-eight (48) hours per week—these are referred to as "on-the-clock" hours.

45.     In addition to their "on-the-clock" hours, Plaintiff and the Putative Collective/Class Members regularly worked between one- and one-half to two hours "off-the-clock" per week and have not been compensated for that time.

46.     Ballad has a policy to automatically deduct at least one 30-minute meal periods from Plaintiff and the Putative Collective/Class Members' daily time regardless of whether they perform compensable work during such "breaks."

47.     Specifically, non-exempt employees, such as Plaintiff and the Putative Collective/Class Members, automatically have thirty (30) minutes per day for a meal period deducted from his or her hours worked each shift.

48.     Despite automatically deducting thirty (30) minutes of time from Plaintiff and the Putative Collective/Class Members' daily time, Ballad does not completely relieve Plaintiff and the Putative Collective/Class Members from duty during their shift for the purposes of taking their meal break(s).

49.     Ballad's policies require Plaintiff and the Putative Collective/Class Members to assist patients whenever a patient requests or needs assistance, even if on an unpaid meal break.

50.     Plaintiff and the Putative Collective/Class Members are prohibited from ignoring patients in need of assistance pursuant to Ballad's policies.

51.     Plaintiff and the Putative Collective/Class Members are required to perform duties, whether active or inactive, during all hours of their shift.

52.     Due to these requirements, Plaintiff and the Putative Collective/Class Members are frequently unable to receive sufficient time to have an uninterrupted meal break due to their constant patient calls and duties.

53.     Ballad's policies provide that Plaintiff and the Putative Collective/Class Members are supposed to find other staff member(s) to watch their patients while they take a meal break.

54.     Due to staff shortages however, Plaintiff and the Putative Collective/Class Members are rarely if ever, able to find a coworker who has the ability to adequately monitor and care for patients other than their own.

55. Plaintiff Hall frequently worked throughout his entire shift in both the Cardiac Care Unit and Intensive Care Unit without taking any breaks due to his critically ill patients' medical needs.

56. Ballad was (and continues to be) aware that Plaintiff and the Putative Collective/Class Members regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA and Tennessee state law.

57. Indeed, Ballad had actual knowledge that Plaintiff and the Putative Collective/Class Members regularly worked through their meal breaks due to the Kronos Time Correction Report.

58. Specifically, Ballad's time keeping software, Kronos, provides a Time Correction Report feature, wherein hourly employees are supposed to be able to make requests to have their recorded hours worked adjusted, such as requesting to have the automatic meal break deduction reversed because they were unable to take a break.

59. However, Ballad regularly rejected (and continues to reject) the time correction requests made by the Plaintiff and Putative Collective/Class Members and even punished those who attempted to use the report when they did not receive a meal break.

60. While working as an ICU nurse, Plaintiff Hall entered comments that he had been unable to take meal breaks on October 17, 2021, and October 18, 2021, in Ballad's Kronos time-keeping software. On October 19, 2021, Ballad's ICU Nurse Manager, Christy Johnson ("Johnson"), texted Plaintiff Hall that he needed to start taking lunch and that he would not be paid by Ballad because two nurses had been "out of staffing" to help with breaks.

61. Plaintiff Hall complained to his Lancesoft recruiting agency supervisors that Lancesoft and Ballad were not paying him for having to work through his meal breaks. Lancesoft supervisors advised the plaintiff that Ballad was reporting fewer hours worked for the Plaintiff than the Plaintiff was reporting to Lancesoft. Lancesoft managers advised the Plaintiff they would file a "grievance"

with Ballad over his unpaid overtime. To date, Plaintiff Hall has not heard anything back from Lancesoft regarding any grievance.

62. During the evening of June 8, 2022, Ballad Holston Valley's officers and managers called a special meeting denominated as a "Listening Session" with Plaintiff Hall and approximately two dozen other registered nurses. During the session, Plaintiff Hall and fellow travel nurse, Lynsey Hughes ("Hughes"), complained verbally that Ballad's inadequate staffing was requiring them and other nurses to work through their meal breaks but that Ballad was not paying them for these work hours, which often qualified as overtime. Plaintiff Hall also complained that he had been told that he could not note that he had to work through his meal break in Ballad's Kronos time-keeping software because Ballad would not pay him or the other nurses for working through their meal breaks. Mr. Hall stated that by having him and others work through their lunch without pay violated both state and federal law.

63. Lindy White ("White"), Ballad's CEO of the Holston Valley location, and Adnan Brka ("Brka"), Ballad's Chief Nursing Officer of the Holston Valley location, were present during the June 8, 2022, "Listening Session" and heard Plaintiff Hall and Hughes's complaints about being denied their earned overtime pay.

64. Brka told Plaintiff Hall that Ballad's Charge Nurse was supposed to "come around" and fill in for Plaintiff Hall and other nurses while they each took 30-minute meal breaks. Plaintiff Hall responded that the Charge Nurse did not make herself available to work during various nurses' meal breaks and could not actually cover the meal breaks for eight (8) or more nurses during any single shift and still do their own job.

65. When Brka told Plaintiff Hall that he was supposed to note his inability to take a meal break in the Kronos book, Plaintiff Hall replied that he had done so and had received a text

message from the Nurse Manager that he had to take a meal break and would not be paid for working through it.

66. Instead of investigating why Ballad's managers were messaging Plaintiff Hall that he would not be paid for all time worked, Brka instead questioned Plaintiff Hall as to why he could not ask his RN "pod partner" to treat his patients during his meal break. Plaintiff Hall stated that it was not realistic or safe to leave another nurse with the responsibility to care for six patients instead of three patients. Plaintiff Hall reminded Brka that each nurse was responsible for the care that each of their patients received or didn't receive regardless of any meal break. Brka then confirmed that Ballad would not pay Plaintiff Hall for working through meal breaks.

67. Plaintiff Hall verbally objected to Brka's refusal to pay him for all time worked. Specifically, Plaintiff Hall asserted that Ballad was violating federal law by requiring him and other similar situated individuals ("Putative Collective/Class Members") to work through their meal breaks without pay. Plaintiff Hall asserted that the time spent working through meal breaks often qualified as unpaid overtime, which Ballad was obligated to pay under federal law.

68. Plaintiff Hall also told Brka and White that they were violating state law by not allowing the nurses to take a meal break. Plaintiff Hall told Brka and White that he had been working as a Ballad travel nurse for nearly a year, before that was a Ballad staff nurse, and that he had never been offered a meal break or relieved of nursing duties during the work shift so he could take a meal break.

69. Brka responded that regardless of staffing issues or the acuity of his patients, the plaintiff had to take a meal break, "period." Plaintiff Hall asked again how he was supposed to take a meal break if no nurse was available to assume the care of his critically-ill patients. White and Brka ignored the question, changed the subject, and began talking with other nurses.

70. Ballad's systematic deduction of thirty (30) minutes each day from Plaintiff and the Putative Collective/Class Members' "on-the-clock" time resulted (and continues to result) in Plaintiff

and the Putative Collective/Class Members' working straight time hours and overtime hours for which they were (and are) not compensated at the rates required by the FLSA and Tennessee state law.

71.     Specifically, when Plaintiff and Putative Collective/Class Members worked three (3) twelve-hour shifts in a week and did not receive a meal break during any shift, Ballad's deduction resulted in Plaintiff and the Putative Collective/Class Members not being paid for one and one-half hours of compensable straight time work.

72.     When Plaintiff and the Putative Collective/Class Members worked four (4) twelve-hour shifts in a week and did not receive a meal break during any shift, Ballad's deduction resulted in Plaintiff and the Putative Collective/Class Members not being paid for two hours of compensable overtime work.

73.     As a result of Ballad's failure to compensate Plaintiff and the Putative Collective/Class Members for compensable work performed "off the clock," Plaintiff and the Putative Collective/Class Members worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and Tennessee state law.

74.     Ballad knew or should have known that it was not (and is not) compensating Plaintiff and the Putative Collective/Class Members for the proper amount of overtime compensation in violation of the FLSA.

75.     Ballad knew or should have known that its failure to pay the correct amount of straight time and overtime to Plaintiff and Putative Collective/Class Members would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective/Class Members.

76.     Ballad knew or should have known that automatically deducting thirty minutes to one hour for a meal break, while it simultaneously caused and required Plaintiff and the Putative Collective/Class Members to perform necessary work during that meal break while "off-the-clock"

would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective/Class Members.

77.     Because Ballad did not pay Plaintiff and the Putative Collective/Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Ballad's pay policies and practices willfully violated (and continue to violate) the FLSA.

78.     Because Ballad did not pay Plaintiff and the Putative Collective/Class Members for all straight time and overtime hours worked, Ballad's pay policies and practices violated (and continue to violate) Tennessee state law.

79.     Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid straight time and overtime pursuant to Tennessee state law.

## RETALIATION

80.     On June 13, 2022 (the Monday following the Listening Session), Plaintiff Hall received a text message from Hughes stating she had been fired by Ballad.

81.     Shortly after receiving this message Plaintiff Hall attempted to access his Ballad scheduling program but was denied access.

82.     Although Plaintiff Hall had been scheduled to work that evening, when he called to confirm his shift his Ballad charge nurse, Melissa Kozakowski, reported that he was not on her schedule but asked if he would like to come in anyway.

83.     Plaintiff Hall responded that he was supposed to be already scheduled but would come in to find out what was going on by asking the Nurse Manager, Johnson.

84.     Upon arrival at the Holston Valley location, Plaintiff Hall discovered his ID Badge for the rear door had been disabled, so he had to be let in by other employees.

85.     During his in-person conference with Nurse Manager Johnson, Plaintiff explained he had lost all access to the building and his schedule. Johnson stated that as far as she knew Plaintiff Hall had not been fired.

86.     Plaintiff Hall then contacted Lancesoft for additional information on the situation.

87.     Lancesoft stated that Ballad had terminated Plaintiff Hall, but that Ballad did not provide any reason for its termination.

88.     Nurse Manager Johnson telephoned Brka and advised him that she had Plaintiff Hall in her office and asked what should she tell him. Brka told Johnson to tell Plaintiff Hall that Ballad was "investigating travelers Ballad-wide" and hung up. Johnson repeated Brka's message to Plaintiff Hall. Plaintiff Hall asked what that meant. Johnson replied she didn't know.

89.     After Plaintiff Hall left the Johnson's office, Lancesoft telephoned Plaintiff Hall and advised him that Ballad had terminated him because the address on his nursing license was less than 100 miles from the Holston Valley location. Plaintiff Hall asked what that had to do with anything. The recruiting agent responded that they had never heard of anything like that before.

90.     The Lancesoft agent advised Plaintiff Hall to call Sharron Fleenor ("Fleenor") who managed all of Ballad's Travel Nurses. Fleenor told Plaintiff Hall that she could not talk to him, that he needed to talk to his recruiter. Fleenor insisted that his recruiter knew what was going on and that Plaintiff Hall needed to talk to his recruiting agency.

91.     A Lancesoft representative subsequently advised Plaintiff Hall by telephone that Ballad had requested only his and Hughes' "profiles." At the time, Lancesoft supplied at least a dozen registered nurses to Ballad. Plaintiff Hall was also informed and believes that a dozen or more traveling registered nurses had license addresses within 100 miles of their employment at Holston Valley Medical Center but were not terminated. Only Plaintiff Hall and Hughes, who objected to

Ballad's not paying them for working overtime through lunch breaks and for not affording them and other nurses the state statutorily required 30- minute lunch breaks, were terminated by Ballad.

92.     Ballad's traveling nurse position description does not require that the mailing address on a nursing license be more than 100 miles from Holston Valley. Ballad's practice—and its nursing job description requirement—were that nurses who worked at the Holston Valley location had to actually reside more than 100 miles from the Holston Valley. At the time, Plaintiff Hall resided more than 100-miles from Holston Valley. Plaintiff Hall avers that Ballad's manipulation of, and violation of, its policies are additional evidence of the Ballad's mendacity and illegal retaliation.

93.     The next day, Plaintiff Hall telephoned Ballad's Human Resources ("HR") about his application for a local contract nursing position with Ballad. Plaintiff Hall asked the female representative to check his eligibility status. The Ballad HR representative responded that he was on the "do not rehire" list. Plaintiff Hall asked why and how he could fix it. Ballad's HR representative advised him to e- mail his request to the HR Department. Plaintiff did so and asked to be rehired.

94.     Defendant's Human Resources staff responded to Plaintiff Hall's request and advised him that because of "historical documentation" he was not re-hireable by Ballad. Ballad thereby effectively "blacklisted" Plaintiff Hall from medical center/hospital skilled registered nursing jobs in the upper East Tennessee area and Southwest Virginia area.

95.     Plaintiff Hall has been unable to locate comparable employment in the area and was working as a traveling nurse for a lower rate of pay in Knoxville, Tennessee for a Covenant medical center, prior to the filing of this lawsuit. The Covenant medical paid the plaintiff for working through lunch breaks.

96.     Ballad's actions, canceling his traveling nurse contract because his licensing address was within 100 miles of Kingsport was an illegal pretext for its retaliating against him because he objected to and complained about Ballad's owing him unpaid overtime and also because he objected to, refused

to remain silent about, and complained about the Ballad's violation of the FLSA and about required lunch breaks mandated by Tennessee state law codified at T.C.A. §50-2-103(h).

97.     The provision of 29 U.S.C.§ 215(a)(3) prohibit Ballad from retaliating against him by canceling his nursing contract and by immediately "blacklisting" him from any employment at Ballad's facilities because Plaintiff Hall complained about and objected to Ballad's violations of federal and state statutes during Ballad's June 8, 2021, "Listening Session" with Holston Valley managing agents. *See Kasten v. Saint-Gobain Performance Plastics,* 563 U.S. 1, 15-17 (2011) and *EEOC v. Romeo Community Sch.,* 976 F.2d 985, 989 (6th Cir. 1992). Ballad's retaliation embarrassed Plaintiff Hall, caused him to suffer mental distress, and required him to search for other, lower-paying employment as a registered nurse.

98.     By canceling Hall's traveling nurse contract and by then "blacklisting" him from employment at any of the region's Ballad's medical centers and hospitals, Ballad illegally retaliated against him for his refusal to remain silent about the Ballad's violation of federal and state codified laws as prohibited by the state's "whistle-blowing" statute codified in the Tennessee Public Protection Act at T.C.A. § 50-1-304(b). Ballad's retaliation embarrassed the plaintiff, caused him to suffer mental distress, and required him to search for other lower-paying employment as a registered nurse.

## V.
### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### (Collective Action Alleging FLSA Violations)

**A.     FLSA COVERAGE**

99.     The preceding paragraphs are incorporated as though fully set forth herein.

100.    The "FLSA Collective" is defined as:

**ALL HOURLY PATIENT-FACING CARE PROVIDERS WHO WORKED FOR BALLAD HEALTH, AT ANY TIME FROM JANUARY 6, 2020, THROUGH THE FINAL DISPOSITION OF THIS MATTER AND WERE**

**SUBJECT TO AN AUTOMATIC MEAL BREAK PAY DEDUCTION ("FLSA Collective" or "FLSA Collective Members").**

101.    At all material times, Ballad has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

102.    At all material times, Ballad has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

103.    At all material times, Ballad has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of a hospital and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

104.    Specifically, Ballad operates numerous health care facilities in Tennessee, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

105.    During the respective periods of Plaintiff and the FLSA Collective Members' employment by Ballad, these individuals provided services for Ballad that involved interstate commerce for purposes of the FLSA.

106.    In performing work for Ballad, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

107.     Specifically, Plaintiff and the FLSA Collective Members are (or were) hourly employees who assisted Ballad's customers and employees throughout the United States. 29 U.S.C. § 203(j).

108.     At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

109.     The proposed collective of similarly situated employees sought to be certified pursuant to 29 U.S.C. § 216(b) is defined in Paragraph 100.

110.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Ballad.

## B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA

111.     Ballad violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of a hospital, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

112.     Moreover, Ballad knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

113.     Ballad knew or should have known its pay practices were in violation of the FLSA.

114.     Ballad is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

115.     Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted Ballad to pay them according to the law.

116.    The decision and practice by Ballad to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was not reasonable nor in good faith.

117.    Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.    COLLECTIVE ACTION ALLEGATIONS

118.    All previous paragraphs are incorporated as though fully set forth herein.

119.    Pursuant to 29 U.S.C. § 216(b), Hall brings this action collectively on behalf of Ballad's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

120.    Other similarly situated employees of Ballad have been victimized by Ballad's patterns, practices, and policies, which are in willful violation of the FLSA.

121.    The FLSA Collective Members are defined in Paragraph 100.

122.    Ballad's failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Ballad's, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

123.    Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

124.    The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

125. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

126. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

127. Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries, and Ballad will retain the proceeds of their violations.

128. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

129. Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated plaintiffs as in Paragraph 100.

## COUNT TWO
### (Class Action Alleging Violations of Tennessee Common Law)

## A. VIOLATIONS OF TENNESSEE COMMON LAW

130. The preceding paragraphs are incorporated as though fully set forth herein.

131. Plaintiff Hall further brings this action pursuant to the equitable theory of *quantum meruit. See Cannon v. Citicorp Credit Servs., Inc., (USA)*, No. 2:12-CV-88, 2014 WL 1267279, at *5 (E.D. Tenn. Mar. 26, 2014); *Carter v. Jackson-Madison Cty. Hosp. Dist.*, No. 110CV01155JDBEGB, 2011 WL 13238697, at *4 (W.D. Tenn. Dec. 13, 2011) (citing *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524–25 (Tenn. 2005); *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998); *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966)).

132. The Tennessee Class is defined as:

**ALL HOURLY PATIENT-FACING CARE PROVIDERS WHO WORKED FOR BALLAD HEALTH, IN THE STATE OF TENNESSEE AT ANY TIME FROM JANUARY 6, 2017, THROUGH THE FINAL DISPOSITION**

**OF THIS MATTER, AND WERE SUBJECT TO AN AUTOMATIC MEAL BREAK PAY DEDUCTION ("Tennessee Class" or "Tennessee Class Members").**

133.    Plaintiff Hall and the Tennessee Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of Ballad.

134.    These claims are independent of Plaintiff Hall's claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Cannon v. Citicorp Credit Servs., Inc., (USA)*, No. 2:12-CV-88, 2014 WL 1267279, at *5 (E.D. Tenn. Mar. 26, 2014) (citing *Woodall v. DSI Renal, Inc.*, No. 11–2590, 2012 WL 1038626, at *3–6 (W.D. Tenn. Mar. 27, 2012); *Carter v. Jackson-Madison Cty. Hosp. Dist.*, No. 1:10-CV-01155-JDB, 2011 WL 1256625, at *11 (W.D. Tenn. Mar. 31, 2011)).

135.    Plaintiff Hall and the Tennessee Class Members provided valuable services for Ballad, at Ballad's direction, and with Ballad's acquiescence.

136.    Plaintiff Hall and the Tennessee Class Members conferred a valuable benefit on Ballad because they provided services to Ballad while not on the clock—during their respective meal breaks—without compensation.

137.    Ballad accepted Plaintiff Hall and the Tennessee Class Members' services and benefited from their timely dedication to Ballad's policies and adherence to Ballad's schedule.

138.    Ballad was aware that Plaintiff Hall and the Tennessee Class Members expected to be compensated for the services they provided Ballad.

139.    Ballad has therefore benefited from services rendered by Plaintiff Hall and the Tennessee Class Members, and it is inequitable for Ballad to retain the benefit of Plaintiff Hall and the Tennessee Class Members' services without paying fair value for them.

140.    Plaintiff Hall and the Tennessee Class Members are thus entitled to recover pursuant to the equitable theory of *quantum meruit*.

### C.    TENNESSEE CLASS ALLEGATIONS

141.    Plaintiff Hall and the Tennessee Class Members brings their Tennessee claim as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by Ballad to work in Tennessee since January 6, 2017.

142.    Class action treatment of Plaintiff Hall and the Tennessee Class Members' claims is appropriate because all of Rule 23's class action requisites are satisfied.

143.    The number of Tennessee Class Members is so numerous that joinder of all class members is impracticable.

144.    Plaintiff Hall's Tennessee state-law claims share common questions of law and fact with the claims of the Tennessee Class Members.

145.    Plaintiff Hall is a member of the Tennessee Class, his claims are typical of the claims of other Tennessee Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other Tennessee Class Members.

146.    Plaintiff Hall and his counsel will fairly and adequately represent the Tennessee Class Members and their interests.

147.    Class certification is appropriate under FED R. CIV. P. 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

148.    Accordingly, the Tennessee Class should be certified as defined in Paragraph 132.

### COUNT THREE
(Retaliation – 29 U.S.C. § 215(a)(3))

149.    At all material times, Plaintiff Hall has been entitled to the rights, protections and benefits provide by the FLSA, 29 U.S.C. §§ 201–19, because he was an employee of Ballad.

150.     Specifically, Plaintiff Hall engaged in protected activity when he complained about unpaid wages to Ballad during the Listening Session.

151.     The FLSA, 29 U.S.C. § 218c(a)(2)–(5), makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee" because such employee: provided information relating to any violation of the FLSA to the employer, objected to or refused to participate in any policy the employee reasonably believed to be in violation of the FLSA.

152.     Ballad retaliated against Plaintiff Hall, in violation of 29 U.S.C. § 218c(a)(2)–(5), for asserting his rights under the FLSA by complaining of unpaid wages.

153.     Specifically, Ballad terminated Plaintiff Hall and blacklisted him from further employment with Ballad.

154.     Ballad knowingly, willfully, wantonly, and/or with reckless disregard carried out its retaliation against Plaintiff in violation of 29 U.S.C. § 218c(a)(2)–(5).

155.     Plaintiff Hall suffered damages including lost wages and mental distress due to Ballad's illegal retaliation.

## COUNT FOUR
(Retaliation Under TPPA)

156.     At all material times, Plaintiff Hall has been entitled to the rights, protections and benefits provide by the TPPA, because he was an employee of Ballad and Ballad was his employer. *See* T.C.A. § 50-1-304(a)(1)–(2).

157.     Specifically, Plaintiff Hall engaged in an activity protected by the TPPA when he complained to Ballad during the Listening Session about its illegal practices—that he and other nurses had not received meal breaks that were required under Tennessee law or been paid for all of his overtime in violation of the FLSA. *See* T.C.A. § 50-2-103(h)(1)(A).

158.     The TPPA make it illegal for employers to terminate employees, like Plaintiff Hall, for their refusal to participate in or remain silent about "illegal activities." *See* T.C.A. 50-1-304(b).

159. The TPPA defines "illegal activities" as activities that are in violation of any federal or state law.

160. Ballad violated the TPPA by terminating Plaintiff Hall after he refused to remain silent about Ballad's violations of both federal and state law.

161. Plaintiff Hall suffered damages including lost wages and mental distress due to Ballad's illegal retaliation.

# VI.
# RELIEF SOUGHT

162. Plaintiff Hall respectfully prays for judgment against Ballad as follows:

a.     For an Order certifying the FLSA Collective as defined in ¶ 100;

b.     For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.     For a Jury Trial;

d.     For an Order pursuant to § 16(b) of the FLSA finding Ballad liable for unpaid wages, including unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

e.     For an Order certifying the Tennessee Class as defined in ¶ 132, and designating Plaintiff Hall as Representative of the Tennessee Class;

f.     For an Order pursuant to the Tennessee state law awarding Plaintiff Hall and the Tennessee Class Members damages for unpaid wages and all other damages allowed by law;

g.     For an Order pursuant to the FLSA finding Ballad liable for compensatory damages, lost wages, liquidated damages, and equitable relief due to Plaintiff Hall for its illegal retaliation.

h. For an Order pursuant to Tennessee state law, finding Ballad liable to Plaintiff Hall for compensatory damages in the amount of $400,000.00, and for punitive damages in the amount for $400,000.00 for its retaliating against him in violation of the TPPA.

i. Equitable relief under the TPPA and the THRA provisions in the nature of reinstatement to nursing employment at any Ballad medical center, or alternately, to an equitable award of front pay.

j. For an Order awarding the costs of this action;

k. For an Order awarding attorneys' fees;

l. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

m. For an Order awarding Plaintiff Hall a service award as permitted by law;

n. For an Order compelling the accounting of the books and records of Ballad, at Ballad's expense (should discovery prove inadequate); and

o. For an Order granting such other and further relief as may be necessary and appropriate.

Date: January 22, 2023                                   Respectfully submitted,


By:     /s/ C. R. DeVault, Jr.
        Charlton R. DeVault, Jr.
        TN BPR #000428
        102 Broad Street
        Kingsport, TN 36660
        (423) 246-3601

        and

        **Clif Alexander** *(Pro Hac Vice Anticipated)*
        Texas Bar No. 24064805
        clif@a2xlaw.com
        **Austin Anderson** *(Pro Hac Vice Anticipated)*
        Texas Bar No. 24045189

austin@a2xlaw.com
**Carter T. Hastings** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24101879
carter@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Counsel for Plaintiff and Putative Collective/Class Members***